IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 15, 2003 Session

## MATTHEW BRUCE HENDERSON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County
No. 2000-D-2031      Cheryl Blackburn, Judge**

_____

**No. M2002-02501-CCA-R3-PC - Filed August 14, 2003**

_____

The petitioner, Matthew Bruce Henderson, appeals the denial of his petition for post-conviction relief. The petitioner originally entered best interest guilty pleas to two counts each of rape of a child, aggravated sexual battery, and statutory rape, and received an effective sentence of twenty-four years. On appeal, the petitioner contends (1) he received ineffective assistance of counsel in entering his pleas; (2) the trial court erred in failing to hold a competency hearing prior to accepting his pleas; and (3) his guilty pleas were not knowingly and voluntarily entered. Upon review of the record and applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOE G. RILEY and THOMAS T. WOODALL, JJ., joined.

Charles E. Walker, Nashville, Tennessee, for the appellant, Matthew Bruce Henderson.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Roger D. Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The petitioner was originally charged with six counts of rape of a child, six counts of aggravated sexual battery, four counts of rape where the victim was mentally defective, four counts of statutory rape, and two counts of especially aggravated sexual exploitation of a minor. See Tenn. Code Ann. §§ 39-13-503(a)(3) (rape of a mentally defective victim); -504(a) (aggravated sexual battery); -506(a) (statutory rape); -522(a) (rape of a child); -17-1005(a) (especially aggravated sexual exploitation of a minor). The petitioner entered best interest guilty pleas to two counts each of rape of a child, a Class A felony; aggravated sexual battery, a Class B felony; and statutory rape, a Class E felony. See id. § 39-13-504, -506, -522. Pursuant to the plea agreement, the petitioner received an effective sentence of twenty-four years.

## FACTS

According to the facts presented by the State at the petitioner's plea hearing, the petitioner was the manager of an apartment complex where the victims' family resided. The three victims were sisters, ranged in age from six to thirteen, and were all disabled or mentally retarded to varying degrees. The petitioner paid the victims to clean vacant apartments, and the victims had to go to the petitioner's office, where the incidents occurred, in order to obtain the work.

At the post-conviction relief hearing, the petitioner testified trial counsel met with him once at the Criminal Justice Center ("CJC") for approximately five to ten minutes. During this meeting, trial counsel provided the petitioner with the indictment and a list of the ranges of punishment for each offense. The petitioner stated counsel did not provide him with discovery materials prior to entering the pleas. He maintained that the discovery materials were proof of his innocence, and, had he been provided with the documents prior to the plea hearing, he would not have entered the pleas.

The petitioner testified trial counsel informed him that the State had an audiotape recording of his confession to the police. He denied confessing to the police. The petitioner further stated he listened to the audiotapes prior to the post-conviction hearing, and he did not hear a confession on the tapes.

The petitioner testified trial counsel did not discuss defense strategies or tactical decisions with him. He claimed counsel informed him that because he confessed, he would be convicted if the case went to trial. The petitioner stated trial counsel met with him at the courthouse to discuss a possible plea. He recalled that the State first offered forty-six years but eventually reduced the offer to twenty-four years. The petitioner was then granted a one-week continuance in order to discuss the plea with his wife.

The petitioner testified that when he entered the pleas, his mind was "all screwed up" because his medication had been changed. The petitioner stated he suffers from depression, bipolar disorder, and diabetes and has problems with his heart and lungs. The petitioner testified that although he had stated during his plea hearing that he was taking Zoloft, his medication had been changed prior to the plea hearing, and he had been taking Celexa instead. He further stated that at the time he entered the pleas, he was no longer taking Depakote to treat his bipolar disorder and, as a result, was not "thinking right." The petitioner testified he was unable to understand the "full circumstances" of pleading guilty because of "stress" and "nerves" and partly because of his medication. He stated that, without the medication, he was on the "verge of a nervous breakdown."

Byron Grizzle, the records manager for the Davidson County Sheriff's Department, testified the petitioner's visitation records indicated trial counsel visited the petitioner at the CJC on one occasion for approximately thirty-five minutes. Grizzle further stated the department did not maintain records of meetings between trial counsel and the petitioner which occurred at the courthouse.

Deborah McDonald, the health services administrator at the sheriff's department, testified that the petitioner's medical records indicated he was taking various medications for mental health

problems during his incarceration at the CJC. He also met with a psychiatrist on several occasions; however, he was not diagnosed by the psychiatrist as suffering from a specific mental health disease.

Trial counsel testified he obtained discovery from the State and provided the petitioner with discovery materials. He stated he reviewed audiotapes of the police interview with the petitioner during which the petitioner made several "damning" admissions. Trial counsel stated he did not file a motion to suppress the statements because, based upon what he heard on the audiotapes and the petitioner's explanation of the circumstances under which the statements were given, he believed the statements were voluntary.

Trial counsel testified the audiotape revealed that the petitioner confessed to more offenses than were listed in the indictment. Whenever the petitioner made an admission on the audiotape, trial counsel wrote down the offense, the class of the felony, and the range of punishment. He discussed the confession with the petitioner. The petitioner did not actually listen to the audiotapes because CJC officials did not allow audiotape recorders to be brought inside the building. The discovery materials also contained a synopsis of the confession.

Trial counsel testified he informed the petitioner that he had taken similar cases to trial, and, based on his experience, a jury is more likely to convict a defendant on all counts listed in the indictment rather than a select few. Counsel further told the petitioner the trial court could impose consecutive sentences because the case involved multiple child victims and the mental condition of the victims would likely be an enhancement factor.

Trial counsel testified he met with the petitioner on several occasions at the courthouse and once at the CJC. He stated the petitioner also frequently called him at his office to discuss the case. Trial counsel further stated he informed the petitioner of the progress of plea negotiations and fully discussed his options and the evidence against him. He testified the State originally offered a thirty-two-year sentence, but he successfully negotiated a best interest plea with a twenty-four-year sentence.

Trial counsel testified he and the petitioner discussed possible defense strategies. The petitioner advised him that due to health problems and his medication, he was impotent. Trial counsel informed the petitioner that impotence would not be a defense to the charges which did not involve penile penetration. Counsel stated he did not interview any doctors or obtain any medical reports because the petitioner told him what the doctors' testimony would be, and he had no reason to doubt the petitioner's assertions. He stated he would have interviewed the doctors had the case been set for trial.

Trial counsel testified that the only other possible defense witness was the victims' mother, who stated that the victim of the child rape offenses frequently lied. He later discovered that on one occasion, the mother had visited the petitioner's residence accompanied by one of the victims, and the petitioner had taken nude photographs of the mother in the victim's presence. Counsel opined that the mother would not have made a favorable impression on the jury.

Trial counsel testified he did not interview the victims. He stated he believed an interview was unnecessary at that time and, because the victims had been placed in a special home, arranging an interview would have been difficult. Counsel opined that because the victims were mentally impaired, the amount of information obtained from the interview would have likely been "negligible." He acknowledged the victims' statements contained contradictions but believed them to be immaterial.

Trial counsel stated he did not believe a mental evaluation prior to the plea hearing was necessary. He stated that although the petitioner complained of depression, he was "very lucid," understood the proceedings and the charges against him, and had no difficulties in communicating.

Trial counsel opined that twenty-four years was the lowest sentence upon which the State would agree. Once the offer was made, the plea hearing was continued once or twice to allow the petitioner time to fully consider the offer. Trial counsel stated it was the petitioner's decision to enter the pleas.

In its extensive written findings, the post-conviction court found trial counsel met with the petitioner on numerous occasions, spoke to him over the telephone, and permitted him to consider the plea offer prior to the hearing. The court accredited trial counsel's testimony that the petitioner called him at his office on numerous occasions to discuss his case, and that he provided the petitioner with all discovery materials prior to the plea hearing. The post-conviction court found the petitioner failed to show trial counsel was ineffective in failing to meet, advise, or fully inform the petitioner and failed to establish that he was prejudiced.

The post-conviction court found trial counsel was not ineffective for failing to file a motion to suppress the petitioner's confession to the police. The court specifically accredited trial counsel's testimony that no grounds to file a motion to suppress existed. The court further found that the petitioner failed to establish prejudice.

The post-conviction court found trial counsel's failure to interview expert medical witnesses did not constitute ineffective assistance of counsel. The court noted that trial counsel testified the petitioner informed him of his medical conditions and his impotence, and impotence would not be a defense to those sexual offenses in which penile penetration was not an element. The post-conviction court further found that the petitioner failed to establish prejudice.

The post-conviction court also found no deficiency in trial counsel's failure to interview the victims, noting counsel's belief that any information obtained from the mentally impaired victims would be negligible. Furthermore, the court accredited counsel's opinion that the petitioner's admissions were "damning" and would be difficult to overcome with defense witnesses. The court noted that although the victims' mother would have testified that one of the victims frequently lied, trial counsel did not interview her because he knew what her testimony would be, and he believed she would be a poor defense witness due to her participation in a sexually graphic photo shoot with the petitioner in the presence of one of the victims.

Regarding trial counsel's failure to request a mental health evaluation of the petitioner, the post-conviction court noted that during the plea hearing, the trial court questioned the petitioner about his medications and whether they interfered with his ability to understand the proceedings. The post-conviction court found that the petitioner's responses indicated he knowingly entered the pleas. The court noted that at the post-conviction hearing, the petitioner conceded his pleas were not influenced by his medication, rather "it was more nerves." The post-conviction court concluded the petitioner did not receive ineffective assistance of counsel, and he knowingly and voluntarily entered his best interest pleas.

## ANALYSIS

### I. Ineffective Assistance of Counsel

The petitioner contends he received ineffective assistance of counsel in entering his best interest pleas. We disagree.

### A. Ineffective Assistance of Counsel, Generally

When a claim of ineffective assistance of counsel is made under the Sixth Amendment, the petitioner bears the burden of proving (1) that counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings were fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). This standard has also been applied to the right to counsel under Article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S .W.2d 417, 419 n.2 (Tenn. 1989). When a petitioner claims ineffective assistance of counsel in relation to a guilty plea, the petitioner must prove that counsel performed deficiently, and, but for counsel's errors, petitioner would not have pled guilty but would have, instead, insisted upon going to trial. Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court required that the services be rendered within the range of competence demanded of attorneys in criminal cases. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Nichols v. State, 90 S.W.3d 576, 587 (Tenn. 2002).

The petitioner bears the burden of proving by clear and convincing evidence the factual allegations that would entitle petitioner to relief. Tenn. Code Ann. § 40-30-210(f). This court is bound by the post-conviction court's findings of fact unless the evidence preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001).

### B. Failure to Meet with the Petitioner

The petitioner contends trial counsel was ineffective in failing to adequately meet with him in order to investigate the case and advise him of his options. The petitioner maintains trial counsel

met with him only once at the CJC and failed to provide him with discovery materials prior to the plea hearing. However, the post-conviction court accredited trial counsel's testimony that they met and discussed the case once at the CJC and on several other occasions at the courthouse, and that the petitioner frequently called counsel at his office to discuss the case. Trial counsel further stated he provided the petitioner with discovery materials prior to the plea hearing, discussed defense strategies with him, and fully advised him of the applicable law and his options. The evidence does not preponderate against these findings.

### C. Failure to File a Motion to Suppress

The petitioner contends trial counsel was ineffective for failing to file a motion to suppress his confession. However, the post-conviction court accredited trial counsel's testimony that the petitioner's statements were voluntary and there was no basis to file a motion. Furthermore, the petitioner failed to establish any basis upon which the motion would have been granted had it been filed. This issue is without merit.

### D. Failure to Investigate

The petitioner next takes issue with trial counsel's failure to interview the victims. The victims did not testify at the post-conviction hearing, and we may not speculate as to what their testimony might have been. The petitioner has failed to establish that interviews with the victims would have impacted his pleas; therefore, the petitioner has failed to establish prejudice. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

### E. Failure to Seek Expert Medical Witnesses

Finally, the petitioner maintains trial counsel was ineffective in failing to interview expert witnesses regarding his impotence. However, the petitioner failed to present an expert witness at the post-conviction relief hearing. Therefore, the petitioner has failed to establish prejudice. See id. Furthermore, trial counsel testified that although the petitioner informed him of his impotence, counsel did not believe an interview with a doctor was necessary at that point in time. Trial counsel also stated that impotence would be no defense to the offenses in which penile penetration was not an element. The post-conviction court found counsel was not deficient. The evidence does not preponderate against the findings of the post-conviction court.

### II. Competency Hearing

The petitioner contends the trial court erred in failing to hold a competency hearing prior to accepting his guilty pleas. He maintains that the trial court had notice of his mental health deficiencies. We conclude the petitioner is not entitled to relief on this issue.

Requiring an accused to enter a plea or stand trial while mentally incompetent violates both the United States and Tennessee Constitutions. See U.S. Const. amend. XIV; Tenn. Const. art. 1, § 8; Clark v. State, 800 S.W.2d 500, 505 (Tenn. Crim. App. 1990). An accused is competent to stand trial if he has "the capacity to understand the nature and object of the proceedings against him,

to consult with counsel, and to assist in preparing his defense." Mackey v. State, 537 S.W.2d 704, 707 (Tenn. Crim. App. 1975). Our standard of review is "'[w]hether a reasonable judge, situated as was the trial judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial' [or enter a plea of guilty]." Clark, 800 S.W.2d at 506 (quoting Pate v. Smith, 637 F.2d 1068, 1072 (6th Cir. 1981)).

We note that in his post-conviction relief petition, the petitioner initially framed this issue as an ineffective assistance of counsel claim and the post-conviction court addressed this issue as it related to ineffective assistance of counsel. An appellant cannot change theories from the trial court to the appellate court. State v. Alder, 71 S.W.3d 299, 303 (Tenn. Crim. App. 2001); State v. Dooley, 29 S.W.3d 542, 549 (Tenn. Crim. App. 2000). Regardless, we conclude this issue is without merit.

At the plea hearing, the petitioner testified he took medication on a daily basis. The petitioner informed the trial court that the medication did not affect his ability to comprehend the proceedings. When the trial court asked the petitioner whether he clearly understood the proceedings, the petitioner responded:

> Yes, ma'am. I studied it long and hard in the last few days since last week, and me and [trial counsel] met last week here.
>
> . . . .
>
> And I kn[o]w the whole consequences and everything of what I've done and I'm sorry for it, and now I've got to pay for it.

Further, trial counsel testified that he saw no reason to question the competency of the petitioner.

The post-conviction court found no basis to question the petitioner's ability to competently enter a guilty plea. Our review of the plea submission hearing supports this finding. The evidence does not preponderate against the finding of the post-conviction court.

### III. Voluntariness of Guilty Pleas

The petitioner also contends his pleas were involuntary and unknowing. Our supreme court has stated:

> The cases of Boykin v. Alabama and State v. Mackey are the landmark constitutional cases for analyses of guilty pleas. Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969) (federal standard); State v. Mackey, 553 S.W.2d 337 (Tenn. 1977) (state standard). In Boykin, the United States Supreme Court held that before a trial judge can accept a guilty plea, there must be an affirmative showing that it was given intelligently and voluntarily. Id. at 242, 89 S. Ct. at 1711, 23 L. Ed. 2d at 279. In order to find that

the plea was entered "intelligently" or "voluntarily," the court must "canvass[ ] the matter with the accused to make sure he has a full understanding of *what the plea connotes* and *of its consequences*." Id. at 244, 89 S. Ct. at 1712, 23 L. Ed. 2d at 280 (emphasis added).

Likewise, in Mackey, this Court held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea. . . ." 553 S.W.2d at 340.

State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999).

During the plea hearing, the petitioner stated he understood the plea agreement and maintained it was his decision to enter the pleas. He further stated he and trial counsel discussed the elements of each offense charged, the range of punishment for each offense, the possibility of consecutive sentencing, the facts of the case, the State's discovery materials, defense strategies, and potential witnesses. Trial counsel testified the petitioner understood the ramifications of his pleas. The post-conviction court determined the petitioner knowingly and voluntarily entered the pleas. Likewise, our review of the plea submission hearing supports these findings. The evidence does not preponderate against the post-conviction court's finding; thus, this issue lacks merit.

## CONCLUSION

In summary, we conclude the petitioner failed to establish he received ineffective assistance of counsel. Furthermore, the trial court did not err in failing to hold a competency hearing prior to accepting the pleas, and the post-conviction court did not err in finding the petitioner knowingly and voluntarily entered the pleas. Accordingly, we affirm the judgment of the post-conviction court.

_____
ALAN E. GLENN, JUDGE